Larry J. Wulkan (021404)
David C. Onuschak, II (033405)
**STINSON LEONARD STREET LLP**
1850 North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Tel: (602) 212-8505
Fax: (602) 240-6925
Email: larry.wulkan@stinson.com
       david.onuschak@stinson.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Allan Wolf #102561 | No. 3:18-cv-08234-PCT-DLR (JZB) |
| Plaintiff, | **SECOND AMENDED COMPLAINT** |
| v. | |
| Ryan D. Huerta, individually; Brian A. Jacobs, individually; Charles E. Trescher, individually, | |
| Defendants. | |

For his Second Amended Complaint against Defendants, Plaintiff alleges as follows:

## **JURISDICTION AND VENUE**

1. Plaintiff brings this action, pursuant to 42 U.S.C. § 1983, for violations of the Fourteenth Amendment of the United States Constitution.

2. Jurisdiction and venue are proper in this Court pursuant 28 U.S.C. §§ 1331 and 1391, as the parties are residents of Mohave County, Arizona and the events underlying this lawsuit occurred in Mohave County.

## **PARTIES**

3. Plaintiff incorporates the allegations in the paragraphs above as if set forth fully herein.

4. For all material times, Plaintiff Brian Allan Wolf was an individual residing in Mohave County, Arizona.

5. For all material times, Defendant Ryan D. Huerta was an individual residing in Mohave County and employed at the Lake Havasu City Police Department.

6. For all material times, Defendant Brian A. Jacobs was an individual residing in Mohave County and employed at the Lake Havasu City Police Department.

7. For all material times, Defendant Charles E. Trescher was an individual residing in Mohave County and employed at the Lake Havasu City Police Department.

**FACTUAL ALLEGATIONS RELEVANT TO ALL COUNTS**
**OF THIS COMPLAINT**

8. Plaintiff incorporates the allegations in the paragraphs above as if set forth fully herein.

9. On March 30, 2017, Plaintiff, on the condition of anonymity, provided reliable and credible information to Defendants Sergeant Jacobs and Officer Trescher regarding the illegal operation of two known drug dealers, whom the Lake Havasu City Police Department, along with other law enforcement agencies, were investigating.

10. In return for the information, Defendants Jacobs and Trescher promised to keep Plaintiff's identity confidential and ensure his safety.

11. Plaintiff never agreed to have his identity revealed or provide testimony in any proceeding.

12. Defendants Jacobs and/or Trescher conveyed the information given by Plaintiff to Defendant Huerta.

13. Defendants Jacobs and Trescher failed to also convey their agreement with Plaintiff to keep his identity confidential and anonymous.

14. Alternatively, Defendant Huerta was informed of Jacobs and/or Trescher's agreement to keep Plaintiff's identity confidential and anonymous.

15. Using the information provided by Plaintiff, on August 22, 2017, Defendant Huerta submitted an affidavit to a magistrate judge for Search Warrant No. 2017 SW119.

2

16. In his sworn affidavit, Defendant Huerta acknowledged the importance of maintaining the anonymity of the confidential informants involved the investigation, stating:

> Your affiant desires to keep any and all informants mentioned herein confidential and anonymous. It is your affiant's experience that informant's suffer physical, social, and emotional retribution when their identities are revealed. To reveal an informant's identity would likely risk the informant's safety and well-being. The informant therefore wishes to remain anonymous to maintain or allow for future job(s), position(s), personal relationships and community stature.

17. With the exception of Plaintiff's identifying information, every other source of information, including confidential informants and anonymous individuals, had their identities either concealed or redacted in the search warrant affidavit by Defendant Huerta.

18. Defendant Huerta did not redact Plaintiff's name in the search warrant affidavit.

19. After the execution of the search warrant, on or about August 23, 2017, twelve individuals were ultimately arrested.

20. Those arrested individuals had ties to, or were members of, various dangerous gangs.

21. Plaintiff was arrested on August 30, 2017, and placed in the same jail as some, if not all, of those twelve individuals.

22. In or about September 2017, a copy of the search warrant affidavit containing Plaintiff's unredacted name, and the specific information he provided that led to the arrests, was disclosed to each of those twelve individuals.

23. Upon receipt of the search warrant and Defendant Huerta's affidavit, those twelve individuals became aware that Plaintiff provided valuable information to law enforcement that led to their arrest.

24. Plaintiff was never informed that his name had been revealed in the search warrant affidavit.

3

CORE/3514801.0002/148977526.4

25. Because Plaintiff's identity was revealed by Defendant Huerta, Plaintiff was labeled a "snitch" and placed on the "kill lists."

26. While in jail with Plaintiff, a fellow inmate was given instructions to carry out the murder of Plaintiff.

27. In June 2018, that individual entered Plaintiff's jail pod, where he showed all other inmates in the pod the search warrant affidavit containing Plaintiff's identity and told them that Plaintiff was a "snitch." An inmate then passed the search warrant affidavit to Plaintiff, when, for the first time, Plaintiff discovered his named had been revealed by Defendants.

28. The inmate instructed to murder Plaintiff also showed a sharpened cup to other inmates designed to inflict a fatal neck wound on Plaintiff.

29. The sharpened cup was then passed around the pod for the purpose of murdering Plaintiff.

30. Approximately 18 days after jail staff was notified of the planned murder, guards raided the pod and seized a weapon to be used to carry out the murder.

31. Plaintiff also intercepted several "kill kites" – small notes passed by jail gangs – with his name on them. One "kill kite" stated: "This is a direct order from the top. It's nonnegotiable and to be done immediatly [sic]. If the Wolf is freed from his cage he is to be immediatly [sic] put to sleep. I've got the proof from many different sources. He is no good!"

32. In another "kill kite" to "BamBam" and "Smash," the author states: "It's me hey GreenLight [sic] on Brian Wolfe [sic]. Trust me. I recv'd [sic] paperwork."

33. As a result of Defendant Huerta's disclosure of Plaintiff's identity, Plaintiff is subject to daily threats for being a "snitch."

## COUNT ONE

**(Defendants Violated Plaintiff's Rights Under the Fourteenth Amendment and 42 U.S.C. § 1983)**

4

34. Plaintiff incorporates the allegations in the paragraphs above as if fully set forth herein.

35. In return for providing the Lake Havasu City Police Department valuable and reliable information regarding an illicit drug organization, Defendants Jacobs and Trescher guaranteed Plaintiff that his identity would remain confidential and anonymous.

36. Defendants failed to keep Plaintiff's identity confidential and anonymous by revealing such information in his search warrant affidavit.

37. Defendant Huerta disclosed Plaintiff's name in connection with the search warrant.

38. Defendants' acts were under color of state law.

39. Pursuant to the Fourteenth Amendment, Plaintiff has a protected liberty interest in his own bodily security.

40. Defendants' actions in revealing Plaintiff's identity through the search warrant affidavit to other arrested individuals with ties to violent prison gangs affirmatively created a danger to Plaintiff's life that he otherwise would not have faced, including his attempted murder and repeated threats.

41. The wrongful conduct of Defendants constitutes violations of 42 U.S.C. §1983 in that, with deliberate indifference, he deprived Plaintiff of his Fourteenth Amendment substantive due process right of bodily security by creating and/or substantially contributing to a known danger to Plaintiff's life.

42. Defendants' actions have proximately caused Plaintiff serious emotional distress, including anxiety, depression, and suicidal ideations.

## **JURY TRIAL**

43. Plaintiff hereby requests and demands a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for damages and judgment against Defendant as follows:

CORE/3514801.0002/148977526.4

1  (a) General damages in an amount to be proven at trial, as to the causes of action, claims, and theories of relief alleged herein;

(b) Punitive damages in an amount deemed just and reasonable as to the causes of action, claims, and theories of relief alleged herein;

(c) Costs and attorneys' fees against Defendant, pursuant to 42 U.S.C. § 1983; and

Such other and further relief which the Court may deem just and reasonable under the circumstances.

RESPECTFULLY SUBMITTED this 5th day of December, 2018.

**STINSON LEONARD STREET LLP**

By: */s/ Larry J. Wulkan*
Larry J. Wulkan
David C. Onuschak, II
1850 North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Attorneys for Plaintiff

CORE/3514801.0002/148977526.4

**CERTIFICATE OF SERVICE**

I hereby certify that on December 5, 2018, I caused the foregoing document to be filed electronically with the Clerk of Court through ECF.

*/s/ Larry J. Wulkan*

CORE/3514801.0002/148977526.4